LILLIE M. ALDRIDGE, Respondent, v. BROTHER-HOOD OF AMERICAN YEOMEN et al., Appellant.

Springfield Court of Appeals, April 3, 1911.

LIFE INSURANCE: Disappearance Case: Sufficiency of Evidence: Appellate Practice. In an action on a life insurance policy plaintiff recovered in the lower court on the theory that her husband who had disappeared more than seven years ago had died about the time of his disappearance. After the defendant had appealed to the Springfield Court of Appeals, the insured was found in Texas and his identity fully established and he appeared in the appellate court by attorney and asked to be made a party because of his interest in the policy involved in the suit. Subsequently a stipulation was filed in the appellate

court signed by the attorneys for all parties to the effect that if appellant by affidavits and otherwise, convinced the court beyond a reasonable doubt that said insured was in fact alive, then the judgment could be reversed, otherwise to be affirmed. The proofs submitted by appellant are examined and held to establish beyond a reasonable doubt that the insured was alive, and the judgment was accordingly reversed.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside*, Judge.

REVERSED.

*F. M. McDavid* and *Lamar & Lamar* for appellant.

*W. E. Barton* for respondent.

NIXON, P. J.—This was an action on a benefit certificate issued by the appellant, Brotherhood of American Yeomen, to Wales W. Aldridge, of Leland, Iowa, payable to his wife, Lillie M. Aldridge, the respondent. Plaintiff obtained judgment in the trial court in the sum of $1062 from which the defendant perfected its appeal.

The benefit certificate entitled the member to participate in benefits as follows: "$1000 to be paid to Lillie M. Aldridge, related to the insured as wife, payable within ninety days after receipt of satisfactory proofs of death of the member and the surrender of the certificate for cancellation." Receipts were introduced in evidence showing payment of all dues and assessments up to and including July, 1902, and the certificate of defendant's local foreman filed with proofs of death shows payment of all dues up to that date in compliance with the terms of the benefit certificate. Proofs of death and of claimant's right were duly made and surrender of the certificate offered to the defendant on May 1, 1909. Liability being denied, this suit was filed on October 7th of that year, and trial was had

before a jury which found the issues in plaintiff's favor and judgment was entered thereon for $1062.

This is what is called "a disappearance case." The principal question presented to the jury and regarded by the respective parties as vital and decisive was whether the insured, Wales W. Aldridge, was in fact dead. At the conclusion of the evidence, at defendant's request, the court gave the following instruction: "The court instructs the jury that in this case the death of Wales W. Aldridge and the date thereof is in issue and you are further instructed that before plaintiff can recover in this case, you must find and believe from the evidence that Wales W. Aldridge died on or before the 31st day of March, 1902, and unless by a preponderance of the evidence and to your reasonable satisfaction, it has been shown that he died on or before that date, your verdict will be for the defendant."

The evidence at the trial presented by the respondent tended to prove the following state of facts: That the insured was reared in Virginia, where he married, and to that union were born two children, Henry and Worley Aldridge. They with their father came to Missouri about the year 1894, locating near Houston. Shortly afterwards, he married the eldest daughter of W. J. Montgomery. She died at the birth of their first child, about February, 1896. He married plaintiff on April 7, 1898. She, too, had been previously married, but had no children. At the time of this marriage, plaintiff had about six hundred dollars, and her husband had a home in Houston where they resided until the following September. They then moved to a farm three miles from town where they lived two years and two months, during which time one child was born. In November, 1900, the insured, this plaintiff, their (then) only child, and Henry and Worley Aldridge, moved to Leland, Iowa, where they resided till about the middle of February, 1902. During this time, the insured owned and operated a store and worked at the carpenter trade.

The store most of the time was under the management and control of· one Albert Squires. In the latter part of 1901, they sold their property and began closing out their stock of goods, and by the middle of February this work was practically completed, at which time the insured started for Oklahoma to find a new location, leaving Squires to close up the business. At the time of his departure he took about eight hundred dollars, and under his direction there was shipped to him at Oklahoma City the unsold shoes in the stock, worth, perhaps three hundred dollars, and about two hundred dollars worth of general merchandise, as well as his carpenter tools.

The evidence tended to show that the insured was devoted to his family, a good provider, kind and affectionate, enjoying the full confidence of his friends and affection of his wife. In his business he was moderately successful. He was of exemplary habits and enjoyed a good reputation both in Missouri and Iowa. There was no domestic disturbance of consequence during their married life. While they lived ·at Leland, everything was tranquil, and during this time, another child was born. These facts were not only established by the testimony of the plaintiff, but she was strongly corroborated by the witnesses, Squires, Montgomery and Beaty. She further testified: "He said he thought he would go to Oklahoma, but that he would write me when, he found where he was going to stop· and he did so when he got to Oklahoma. I was to come on down to visit his parents and friends in the neighborhood until he found a location and I was to go to him. He was to let me know when to .come and bring the children, a couple of children by his former marriage, and my two little girls, mine and his." They did just as planned except she ceased hearing from him. She stated that on the evening of his departure "he packed up his things and his trunk preparatory to leaving that evening and he stayed in the store part of the day and was settling things around there, and then late in the even-

ing he drove up to Lake Mill, a town about ten miles from there, to take the train to go that evening; and he come in late that evening and told the children good-bye and kissed me, and when he started to go he took the oldest girl in his arms, and he kissed them and told the boys goodbye."

Insured's father and mother heard from him from time to time. His last letter to them was received from Oklahoma City about the latter part of February, 1902, and was of the customary sort, except he said: "I am well and don't be uneasy about me and weigh 170 pounds and I am going to make some money and you shall have your part;" and further, "if anyone asks you where I am or about me or something like that, it ain't nobody's business where I am." At this date the insured was about thirty-two years of age. Insured's father testified that his son was of a very close and secretive disposition and not in the habit of telling his business to anyone or of talking very much. Neither the wife, nor father and mother of Wales W. Aldridge heard from him after that time.

The insured was a carpenter. After he reached Oklahoma, he wrote back for his carpenter tools which were sent to him. After some little time, the plaintiff left Leland and came back to Missouri where she has continued to reside.

After this cause was pending in this court, and on the 15th day of December, 1910, appellant filed its abstract and brief. On January 3, 1911, respondent filed her brief. On January 4, 1911, Wales W. Aldridge, whom the jury had found to be dead, appeared by his attorney in this court and filed an application to be made a party appellant stating therein the following reasons:

"The issues being tried in the above cause are based upon a certificate of insurance issued to this petitioner in 1902 by this defendant, Brotherhood of American Yeomen, the benefits therein being payable to the plain-

tiff herein at the death, and only at the death, of this petitioner; that plaintiff recovered judgment below, and that such recovery is based upon, and in fact is, a judicial finding that this petitioner is dead, when in fact and in truth, your petitioner is in full life and health, and now desires to be heard in his own behalf in this cause. Your petitioner further represents that a verdict for plaintiff herein is and will be an adjudication by this court that petitioner no longer has any interest whatever in the certificate sued on; and your petitioner respectfully shows that no notice of this suit has ever been given him, and that he now comes upon first information that such suit is pending and respectfully prays this court that he be made a party defendant herein, and that he be heard through counsel to the end that no decree shall be finally rendered affecting his interest herein or fixing his status, except upon full hearing of all parties in interest, including this petitioner.

"Your petitioner further respectfully prays that he may be permitted to submit for the consideration of the court, and that he may file in this case, his affidavits and other documents showing his relation to and interest in this case, and showing that he is now in full life, and that he, and not the plaintiff, owns and has whatever interest there may be in the certificate of insurance sued on."

On the same day, the appellant and respondent entered into and filed in this court the following stipulation: (Caption omitted.)

"It is hereby stipulated and agreed that the above cause shall be passed to the March, 1911, term of this court. It is further stipulated and agreed that if, on or before the date of said term, when said cause is set for hearing, the appellant shall show to this court, beyond a reasonable doubt, that Wales W. Aldridge, the insured, was seen by Robert Lamar in El Paso, Texas,

in December, 1910, and that he was in full life and health, and that the affidavits submitted to the court on January 4, 1910, signed by Wales W. Aldridge, and that the photograph bearing his signature, are the signature and photograph of the said Aldridge, made and taken on the — day of December, 1910, then said cause shall be, by this court, reversed and dismissed; otherwise, said cause shall be affirmed. Said proof on points above set forth to be submitted without argument to the court. Said evidence or proof, or copies thereof, to be submitted to opposing counsel five days before same is filed with the clerk of this court. (Signed.) Barbour & McDavid, Robt. Lamar, Attorneys for Appellant. W. E. Barton, Attorney for Respondent."

Under this stipulation, this court continued the cause to its March term, 1911. On the 27th day of February, 1911, depositions and affidavits were filed in this court on behalf of appellant and Wales W. Aldridge, with the several photographs and exhibits referred to in said depositions. No evidence whatever was filed by the respondent in this court under said stipulation. On the 7th day of March, 1911, this cause was taken as submitted on stipulation and briefs.

The evidence filed in this court by which, under the stipulation of counsel, we are to determine whether the insured, Wales W. Aldridge, is dead or alive, is substantially as follows: First, the affidavit of Wales W. Aldridge:

"State of Texas, El Paso County, ss.

"Comes now Wales W. Aldridge and being duly sworn upon his oath deposes and says that he at this time is a resident of the above named state and county, and that the following facts relative to his life and personal history are true and correct.

"That on February 3, 1871, affiant was born in Scott county, Virginia, his parents being Wales E. and Mary C. Aldridge whose marriage was performed in said state and county. That to the union above men-

tioned were born Mrs. Patton Williams, whose name was Manda, affiant, Wales W. Aldridge, Tenie Aldridge, who died about 1901, Julia, deceased wife of George Adams, Joseph Aldridge, who died at about the age of twelve years, Albia Aldridge Gentry, who died about 1901, and Lakie Aldridge, who, when last heard from by affiant, was unmarried, she being affiant's youngest sister. That Wales E. and Mary C. Aldridge, affiant's father and mother, emigrated from the State of Virginia to the State of Missouri, locating at Houston, Texas county, Missouri, where, at this time, so far as affiant is informed, they still reside, and where up to about the year 1901 affiant resided. That affiant was raised on a farm in the state and county above mentioned and when he grew to maturity there learned the carpenter trade, and was there known as a follower of said occupation, which was continued until affiant about the year 1901 moved to Leland, Iowa, where for a time he continued to follow said occupation after which he engaged in the mercantile business at Leland and there continued to operate a small store until about the month of February, 1902, when affiant closed out said business and left for the State of Oklahoma, from which state affiant later addressed letters to Lillie M. Aldridge, his wife, and from which state affiant's whereabouts so far as he is informed, became unknown to said Lillie M. Aldridge and other acquaintances.

"That affiant had prior to the year 1901 during which he left Houston, Texas county, Missouri, been three times married; his first and second wives having died; both having borne children. That Lillie M. Aldridge, affiant's third wife, resided with him at Leland, Iowa, up to the time at which affiant left Iowa for Oklahoma. That at Leland, Iowa, affiant left Lillie M. Aldridge and proceeded to Oklahoma where some time later on the 12th day of April, 1903, under the name of Wales Williams, affiant was married to Jessie Myrtle Southward, of Dibble, McClaine county, Oklahoma, and

continued to live with her at Dibble and at Norman, Cleveland county, Oklahoma, until January 2, 1904, on which date affiant left Norman and some time later after having been for a time at Amarillo, located at El Paso, El Paso county, Texas, where he has to the date of signing this instrument been known by the name of King Worley, carpenter and contractor. That on December 15, 1907, as shown by the records of El Paso county, Texas, affiant was married to Pearl Manning under the name of King Worley, affiant's proper name being that affixed to this instrument.

"That the following named children Henry F. Aldridge, born June 20, 1890; Worley G. Aldridge, born December 30, 1891; Oliver Stonewall Aldridge, born February 11, 1890; Pearl Aldridge, born August 31, 1899, and Ruby Aldridge, born September 18, 1901, are affiant's sons and daughters by his first, second and third wives, the two last mentioned being the daughters of affiant and Lillie M. Aldridge.

"That on the date of signing this instrument affiant is a resident of the city of El Paso, Texas, and has on this date examined a certain photograph of a man with a woman's hand resting on his left shoulder, and identifies said photograph as his own, taken some fifteen or more years ago. That on the date of signing this instrument, affiant, with Robert Lamar, formerly a member of Congress whose residence then was and now is Houston, Texas county, Missouri, and a third person have been photographed in three positions for the purpose of identifying affiant as Wales W. Aldridge formerly of Houston, Texas county, Missouri, and the further purpose of showing that he is at this time living and in good health. (Signed)    Wales W. Aldridge.

"Subscribed and sworn to before me, this the 9th day of Dec. A. D. 1910.   (Signed)   C. H. Jones, Notary Public, El Paso County, Texas.   My Com. expires May 31, 1911."

*Affidavit of Robt. Lamar.*

"State of Missouri, County of Texas, ss.

"Robt. Lamar, of lawful age, being duly sworn, on his oath states that he is a resident of Houston, Texas county, Missouri, and that he has resided continuously at Houston, Missouri, since 1889.

"Affiant further states that he was and is well and intimately acquainted with Wales W. Aldridge who formerly resided at Houston, Missouri, married a daughter of one W. J. Montgomery, and was thereafter married to one Mrs. Lillie M. Hulce, formerly Lillie Carpenter.

"That while the said Wales W. Aldridge resided at Houston, Missouri, he was employed by affiant to build affiant a residence and was in the employ of affiant for some five or six months while engaged in building said residence. That thereafter the said Wales W. Aldridge built a residence just across the street from the home of this affiant and together with the wife of said Aldridge, who is now the plaintiff in this action, resided in said house; that said house is about sixty yards distant from the home of this affiant and that affiant was, during all of said time and prior thereto, well acquainted with said Aldridge.

"Affiant further states that said Aldridge was a member of the Masonic lodge at Houston, Missouri, of which lodge affiant was then and is now a member; that affiant and said Aldridge were, during the time that said Aldridge resided in and near Houston, regular attendants at said lodge and as affiant now remembers, this affiant conferred the degrees upon said Aldridge; that during a portion of this time, this affiant held the Master's station in said lodge while the said Aldridge filled the place of Junior Deacon.

"Affiant further states that on the 8th day of December, 1910, he was with the said Aldridge in the city of Jaurez, Republic of Mexico; that affiant was stand-

ing in a building and saw and recognized said Aldridge on the opposite side of the street, and knew him to be one and the same Wales W. Aldridge whom affiant knew in Texas county, Missouri; that on the same night, to-wit, on the night of December 8, 1910, in the city of El Paso, El Paso county, Texas, affiant again saw the said Aldridge in a Turkish bath room, where affiant and Aldridge had a short conversation in the presence of one E. A. Metz; that from said bath room said Metz, Aldridge and this affiant went to a room in a building in said city and conversed for probably one hour; that from said room affiant and said Wales W. Aldridge went to the room of affiant, and that the said Aldridge and this affiant slept together in the same bed in room 260 of the Orndorf hotel, in the city of El Paso, on the night of December 8, 1910; that on the following day this affiant and the said Wales W. Aldridge and the said E. A. Metz had three negatives made from which were made on December 9, 1910, in the city of El Paso, the three photographs hereto attached and marked exhibits 'A,' 'B' 'C;' that the man seated in the picture marked exhibit 'A' is Wales W. Aldridge; that the man standing with a hat on in the picture marked exhibit 'B' is Wales W. Aldridge; that the man standing, holding a hat in his left hand in the pictured marked exhibit 'C' is Wales W. Aldridge. That on said 9th day of December, 1910, in the city of El Paso aforesaid, at the office of Jones & Jones, attorneys at law, the said Wales W. Aldridge subscribed his name to the affidavits hereto attached and marked exhibit 'D' and 'E' and was sworn to said affidavits by one C. H. Jones, a notary public of said city; that said affidavits were read to the said Wales W. Aldridge before he signed and swore to them, and that the said Wales W. Aldridge furnished much of the information contained in said affidavits.

"Affiant further says that said Wales W. Aldridge who signed said affidavits and whose picture is re-

ferred to in exhibits 'A,' 'B' and 'C' is the same Wales
W. Aldridge who formerly resided at Houston, Mis-
souri, and married Lillie M. Hulce, the plaintiff in this
case.

"Affiant further states that the said Wales W.
Aldridge made no denial of his identity, but freely
and frankly admitted the same, and in conversation
with this affiant talked about places and people at
Houston, Missouri, and sent a present by this affiant to
his grandchild, sent word to his children and to his
father and mother, and told this affiant in conversation
why he had abandoned his said wife, Lillie M. Aldridge,
at Leland, Iowa, and admitted to this affiant that he,
the said Aldridge, has, in the State of Texas, represented
his name to be Wales Williams, and that he, the said
Wales W. Aldridge, was, at El Paso, Texas, and in the
State of Chihuahua, in the Republic of Mexico, going
under the name of King Worley, and was known by that
name at the above places.

"Affiant further says that the said Wales W. Al-
dridge in the presence of this affiant and in the pres-
ence of the said Metz, signed his name on the back of
each of the pictures marked exhibit 'A,' 'B' and 'C' and
also signed the name of Wales Williams, and King Wor-
ley, on the back of each of said pictures, and that this
affiant and the said E. A. Metz, at the same time and
place also signed their names on the back of each of the
said pictures.

"Affiant further says that Jones & Jones above
referred to are Thomas M. Jones and Cyrus H. Jones,
attorneys at law, who formerly resided at Rolla, Mis-
souri, but who now reside at El Paso, Texas, and have
an office in the Rio Grande building in that city. That
the said E. A. Metz is, as the affiant understands, in
the employ of the Thiel Detective Agency, and that his
address is 7409 Princeton Avenue, Chicago, Illinois.

"Affiant further says that when Wales W. Aldridge
resided at Houston, Missouri, affiant herein ordered a

number of plain lambskin aprons, and also certain material with which to trim and decorate said aprons, and that among those for whom this affiant ordered an apron was Wales W. Aldridge, then a member of Texas County Lodge, A. F. and A. M., Number 177. One Oscar P. Travise, then a barber at Houston, Missouri, now deceased, drew with pen and ink 'an all-seeing eye' on the flap of these aprons and under the flap of said aprons placed in red and black ink the names of the owners thereof, and that the wife of this affiant, Mrs. Jennie Lamar, bound said aprons and placed the fringe and other decorations thereon, including the square and compass. Affiant further says that the apron submitted to this court is the same apron owned and worn by Wales W. Aldridge at Houston, Missouri, and decorated and trimmed by the wife of this affiant, and affiant says that the said apron reached Houston, Missouri, by registered mail on December 29, 1910, but was not taken out of the office by affiant until three or four days thereafter, and is now submitted to this court in the same envelope in which affiant received it. Affiant further submits to this court the affidavit of E. A. Metz and others stating where and under what circumstances said E. A. Metz obtained said apron.

"Affiant further submits to the court for the purpose of comparison, the Masonic apron of this affiant made at the same time, and which apron is similar, with the exception that there is worked thereon instead of the square and compass, the square and circle, the same being the jewel of the past master.

"Affiant further says that Wales W. Aldridge whom he saw and talked with and with whom he slept at El Paso, Texas, in December, 1910, had lost the first joint of the first finger of his right hand. (Signed)   Robt. Lamar."   (Notary's certificate omitted.)

The three photographs referred to as exhibits "A," "B" and "C" were filed with the affidavits. Exhibit "A" is a photograph of Wales W. Aldridge seated be-

tween Robt. Lamar and E. A. Metz. Exhibit "B" is a photograph of the same persons with Wales W. Aldridge standing with a hat on, the others being seated. Exhibit "C' is a photograph of the same persons, with Robt. Lamar seated between the others who are standing, Wales W. Aldridge standing on his left holding a hat in his left hand. These photographs are duly authenticated by the autograph signatures of Robt. Lamar, E. A. Metz, and Wales W. Aldridge. The latter also signed on each of the pictures the names "Wales Williams" and "King Worley." On the back of each of the pictures also appears the signatures of Henry F. Aldridge and Worley G. Aldridge, sons of Wales W. Aldridge by his first wife.

The identification of King Worley in the three photographs is supported by the testimony of Thomas M. Jones and Cyrus H. Jones who are attorneys at law with a law office in El Paso, Texas, who state that they know King Worley and have known him for years, and that he is the same person who appeared at their office and made affidavit to facts touching his personal history under the names of Wales W. Aldridge, Wales Williams and King Worley. Also, by the testimony of E. A. Metz, the third person in the photographic groups. After the taking of the photographs marked exhibits "A," "B" and "C," they were exhibited to various persons who resided in Texas county, Missouri, and who had been intimately acquainted with Wales W. Aldridge during his residence at that place, and they positively identified Wales W. Aldridge as one of the group. Among them was Wales E. Aldridge, the father of Wales W. Aldridge, who testified as follows:

"State of Missouri, County of Texas, ss.

"Wales E. Aldridge, being duly sworn, on his oath says that his residence is Texas county, Missouri, and that he is the father of Wales W. Aldridge who married Lillie Hulce, the plaintiff in this case, in Texas county, Missouri.

"Affiant further says that he has examined three photographs attached to the affidavit of Robt. Lamar herein, said photographs being marked exhibits 'A,' 'B' and 'C;' that affiant recognizes and knows the man sitting in the picture marked exhibit 'A,' the man standing with the hat on in exhibit 'B,' and the man standing with the hat in his left hand in exhibit 'C,' to be his son, Wales W. Aldridge, the same man who married the plaintiff in this case and disappeared about 1901.

"Affiant further says that he is familiar with the handwriting of his son, and has examined the three names, 'Wales W. Aldridge,' 'Wales Williams,' and 'King Worley' written on the backs of the three said pictures, and recognizes the same as the writing of his son, Wales W. Aldridge.

"Affiant further says that he has examined a certain Masonic apron showed at this time by Robt. Lamar with the name 'W. W. Aldridge' under the flap thereof, and recognizes the same as the Masonic apron owned and worn by his son, Wales W. Aldridge, when he resided at Houston, Missouri. (Signed) Wales E. Aldridge." (Notary's certificate omitted.)

There was also filed the affidavits of Henry F. Aldridge and Worley G. Aldridge, sons of Wales W. Aldridge by his first wife, who reside in Texas county, Missouri. They state in these affidavits that the three pictures have been examined and they each identify the man referred to as Wales W. Aldridge, as their father, Wales W. Aldridge, and state that for the further purpose of identifying said pictures, they have signed their names on the back of each picture. They also identify a picture marked exhibit "D" as a photograph of their father, Wales W. Aldridge, taken when they were young. They also identify the Masonic apron hereinbefore referred to as their father's apron.

There was also filed the affidavit of Mrs. Jessie Myrtle Ratliff nee Jessie Myrtle Southward, who gave a very full accounts of her courtship and marriage to

Wales Williams in Oklahoma in April, 1903, and their subsequent residence at Dibble, Oklahoma, where Williams was engaged in the mercantile business; that subsequently, they moved to Norman, Oklahoma, and remained there until her husband deserted her and went to the State of Texas. That she had examined the photograph marked exhibit "D" being a photograph of a man with a woman's hand resting on his left shoulder, and identified the man as the one whom she had married and who was known to her as Wales Williams. That during their married life, Wales Williams claimed to have been a member of the Masonic lodge; that while residing at the home of her parents at Dibble he exhibited a sheepskin or Masonic apron, containing on its face a square and compass and the letter "G," the lapel of which was stitched down by Williams; that after Williams had deserted her at Norman, Oklahoma, the lapel of the apron was unstitched and underneath was found the words, "W. W. Aldridge, Texas No. 177."

In addition to the above, other corroborative affidavits are filed by appellant. Also the original application of W. W. Aldridge for membership and benefits in the Modern Woodmen of America signed at Leland, Iowa, and dated January 14, 1901, which shows the autograph signature of W. W. Aldridge. As the respondent has filed no counter affidavits in this court, it would be entirely superfluous to encumber the reports with a more detailed statement of the evidence of the wanderings of Wales W. Aldridge from Scott county, Virginia, through the states of Missouri, Iowa, Oklahoma and Texas, and his final discovery and identification at El Paso, in the State of Texas. The identity of Wales W. Aldridge and the fact of his being in full life and health at the time the judgment in this case was rendered is not only abundantly established, but the array of evidence presented by the appellant is so overwhelming that it forces a conviction of certainty beyond a rea-

sonable doubt approaching the exactness of a mathematical demonstration.

Under the stipulation of counsel, after a most careful examination, this court finds beyond a reasonable doubt from the evidence produced to us that Wales W. Aldridge was at the date of the judgment and prior thereto in full life and health; and in pursuance of said stipulation it is ordered that the judgment rendered by the trial court be reversed and this action be dismissed. All concur.